IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **WEST VIRGINIA DEPARTMENT OF HEALTH & HUMAN RESOURCES, BUREAU FOR MEDICAL SERVICES**<br>    350 Capitol Street, Room 251<br>    Charleston, WV 25301-1757<br><br>        *Plaintiff*,<br><br>    v.<br><br>**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,**<br>    200 Independence Avenue, SW<br>    Washington, DC 20201-0004<br><br>**and**<br><br>**KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, in her official capacity,**<br>    200 Independence Avenue, SW<br>    Washington, DC 20201-0004<br><br>        *Defendants*. | Civ. No. 2:11-cv-00327<br><br><br><br><br><br><br><br>**COMPLAINT** |

**PRELIMINARY STATEMENT**

1.      The West Virginia Department of Health & Human Resources, Bureau for Medical Services ("West Virginia" or "DHHR" or "State") brings this Complaint for declaratory and injunctive relief. West Virginia seeks relief from a disallowance of close to $2.3 million in federal financial participation ("FFP") taken by the Centers for Medicare & Medicaid Services ("CMS"), a federal agency within the U.S. Department of Health & Human Services ("HHS"). The disallowance concerns Medicaid expenditures for school-based health services ("SBHS")

over a nine-month period from October 1, 2000 through June 30, 2001. The expenditures reimbursed the State's public schools for the costs of providing health care services to Medicaid-eligible children who are enrolled in the schools. By its Decision No. 2365, dated March 14, 2011, the HHS Departmental Appeals Board ("DAB" or "Board") upheld the disallowance. A copy of this decision is attached hereto as Exhibit A.

2. For the period covered by the disallowance, DHHR initially claimed FFP for reimbursement covering salary and fringe benefit costs incurred by public schools in providing SBHS to Medicaid-eligible children. Later, after obtaining information that allowed it to quantify operating and indirect costs associated with the provision of these services, DHHR filed a claim of FFP for these additional costs.

3. Federal law requires that States file reimbursement claims within two years after the quarter in which the expenditures were made, subject to certain exceptions. The statute provides that adjustments to prior year costs are *not* subject to the two-year filing limit, so long as initial claims are filed within two years.

4. CMS disallowed the claim for the additional SBHS costs on the ground that the claim had been submitted beyond the applicable two-year period. CMS did not dispute that the State's Medicaid plan required DHHR to adjust the SBHS rates retrospectively to reimburse schools for the total, actual cost of providing SBHS (i.e., cost-based reimbursement). Nor did CMS address the fact that West Virginia lacked reliable statewide historical information about the amount of operating and indirect costs at the time it calculated interim SBHS rates. CMS nonetheless took the position that the claim for additional costs did not qualify for the statutory exception for adjustments to prior year costs.

5. Federal law permitted DHHR to adjust its calculation of SBHS expenditures to claim costs that were not included in the interim SBHS payments as an integral component of the settlement of interim rates in a cost-based system. As a result of Defendants' disallowance of FFP for SBHS costs, the federal government is failing to pay its fair share of amounts the State has paid to its public schools for providing these important services to low-income students. West Virginia seeks a declaration that Defendants' action in disallowing the State's claim for FFP for these SBHS expenditures is arbitrary and capricious, an abuse of discretion, and contrary to law. West Virginia also seeks an order setting aside the DAB's unlawful decision and directing Defendants to pay the State's claim.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361, which provide for original jurisdiction in suits involving questions arising under federal law and suits to compel action by federal agencies.

7. West Virginia's request for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure. There presently exists an actual controversy between the parties.

8. Judicial review is authorized by the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* The March 14, 2011 decision of the DAB upholding CMS's position with respect to the disallowance of $2,298,329 relating to SBHS payments constitutes a "final agency action" within the meaning of 5 U.S.C. § 704.

9. Venue in this Court is proper under 28 U.S.C. § 1391(e)(2) and (3), inasmuch as a substantial part of the events or omissions giving rise to the claim occurred in this district, and Plaintiff resides in this district within the meaning of the statute. Venue in this

Court is also proper under Section 1116(e)(2)(C) of the Social Security Act ("SSA"), 42 U.S.C. § 1316(e)(2)(C), which provides that a State may obtain judicial review of a DAB decision involving the Medicaid program by filing an action in any U.S. District Court located within the appealing State.

## PARTIES

10. Plaintiff West Virginia Department of Health & Human Resources, Bureau for Medical Services, is the "single State agency" responsible for administration of West Virginia's participation in the federal Medicaid program. *See* SSA § 1902(a)(5), 42 U.S.C. § 1396a(a)(5).

11. Defendant U.S. Department of Health & Human Services is the federal agency responsible for administering the Medicaid program. CMS is the entity within HHS that is immediately responsible for overseeing the Medicaid program at the federal level. CMS issued the disallowance at issue in this case.

12. Defendant Kathleen Sebelius is the Secretary of HHS. In that capacity, she is responsible for the overall administration of HHS. Under SSA § 1116(e)(2)(B), 42 U.S.C. § 1316(e)(2)(B), the DAB's decision on West Virginia's appeal of the disallowance is the final decision of the Secretary of HHS. Secretary Sebelius is sued in her official capacity.

## FACTUAL BACKGROUND

*The Medicaid Program*

13. Medicaid is a cooperative federal-state program under which the federal government provides financial assistance to participating States in connection with the provision of health care to lower-income individuals and families. As part of the Medicaid program, the federal government contributes a percentage of the costs that a State incurs in providing health

care to its Medicaid-eligible population.  *See* SSA § 1903(a), 42 U.S.C. § 1396b(a).  Federal Medicaid payments are made in accordance with a state plan for medical assistance, which must be approved by CMS.  *See* SSA § 1902, 42 U.S.C. § 1396a.

14. School-aged children from low-income families are part of the Medicaid-eligible population.  *See* SSA § 1905(a)(i), 42 U.S.C. § 1396d(a)(i).  The federal government funds a portion of State expenses for direct health services furnished by schools to needy Medicaid-eligible children.  *See* SSA § 1903(a), 42 U.S.C. § 1396b(a); SSA § 1915(g)(2), 42 U.S.C. § 1396n(g)(2).  Such services and activities include personal care attendants for children with special needs, health needs assessment and treatment planning, care coordination and monitoring of health services, and specialty transportation services.

15. Section 1903(a) of the Social Security Act provides for variable levels of FFP to reimburse States for some of the costs of their Medicaid activities.  Direct health care services are reimbursed at a rate calculated annually based on the State's per capita income.  SSA § 1903(a), 42 U.S.C. § 1396b(a).  The federal share ranges from 50 to 83 percent.  *See* SSA § 1905(b)(1), 42 U.S.C. § 1396d(b)(1).

*The Two-Year Filing Limit*

16. Under Section 1132(a) of the Social Security Act, claims for FFP must be submitted within the two-year period following the calendar quarter in which the State agency made the expenditure.  SSA § 1132(a), 42 U.S.C. § 1320b-2(a); 45 C.F.R. § 95.7.  Federal payments generally will not be made if a State's claim for reimbursement is "not made within such two-year period."  SSA § 1132(a), 42 U.S.C. § 1320b-2(a).

17. The Medicaid statute and regulations carve out several exceptions to the two-year filing limit, including one for "adjustments to prior year costs."  SSA § 1132(a), 42

U.S.C. § 1320b-2(a); *see also* 45 C.F.R. § 95.19.  An "[a]djustment to prior year costs" is defined as "an adjustment in the amount of a particular cost item that was previously claimed under an interim rate concept and for which it is later determined that the cost is greater or less than that originally claimed."  45 C.F.R. § 95.4.  The State Medicaid Manual, which reflects CMS's interpretation and clarification of the Medicaid statute and regulations, explains that "adjustments to expenditures that are made based on an interim rate which is subject to final cost settlement" fall within the "adjustment to prior year costs" exception, so long as the interim rate is claimed within the applicable two-year period.  State Medicaid Manual § 2560.4(A)(2).

*West Virginia Methodology for Reimbursement of SBHS Costs*

18. In 2000, West Virginia amended its State Medicaid Plan to provide seven types of SBHS relating to personal care, health needs assessment and treatment planning, care coordination, and specialty transportation services.  The plan amendment set forth a retrospective payment methodology for reimbursing school systems for the actual expenses incurred in providing SBHS.  Reimbursement under the plan is made on a "fee-for-service" basis, meaning that "[r]eimbursement interim rates are based on statewide historical costs" for each service.  West Virginia State Medicaid Plan, Attach 4.19-B, pp. 6, 14 (as amended by Transmittal No. 00-01) (effective Jan. 1, 2000).  Costs may not "exceed actual, reasonable costs and must be cost settled on an annual basis."  *Id.*  The State included such language to assure CMS that SBHS rates and payments would not exceed total costs, both initially and as they were updated.

19. Prior to 2002, West Virginia did not have reliable historical statewide data for the operating and indirect costs associated with SBHS.  In 2002, the State finalized and fully implemented the West Virginia Education Information System ("WVEIS"), an interactive management information system used by schools and school systems to manage their daily

6

operations. All 55 county school systems are required to provide complete, standardized costs that are compiled in WVEIS. A primary function of the system is to electronically transmit SBHS billing information to DHHR to facilitate Medicaid claims and payment. The system collects information permitting West Virginia to determine accurately the actual costs of school-based health services incurred, and settle the interim rates.

20. School year 2000 was the first year for which the fully implemented system captured complete data. Since that year, DHHR has used WVEIS data, including statewide operating and indirect costs, to calculate the final, cost-settled rates of providing SBHS to Medicaid-eligible children in the State.

*West Virginia's Timely Claim Based on Interim Rates*

21. DHHR first began to reimburse school districts for SBHS costs while the State was still finalizing WVEIS. For the period covered by the disallowance, DHHR calculated interim rates for SBHS using a paper survey of special education salary and fringe benefit expenses that had been prepared for the State Department of Education.

22. For the period at issue here, the State used the limited historical cost data reported through the paper survey to calculate interim rates for each category of SBHS provided to public school students. These interim rates took into account the information on salary and fringe benefit expenses collected through the paper survey. The State timely filed with CMS claims for FFP based on the interim rates.

23. Because West Virginia could not precisely identify indirect and operating costs until WVEIS was fully implemented, these costs were not included in the initial interim rates. DHHR never stated that it intended to exclude operating or indirect costs from its claim for the total, actual costs of providing SBHS, as determined following final cost settlement.

*West Virginia's Subsequent Claim Based on Retrospective Rate Adjustments*

24.     In 2002, DHHR contracted with an outside consultant to calculate and verify the total, actual costs for each of the specific SBHS that the State had timely claimed based on an interim rate.  By this time, WVEIS state-wide current and historical cost data were available.  Once the consultant used these data to calculate and verify costs, DHHR concluded that actual costs exceeded the interim rates for SBHS on which it had based its initial claim covering the period from October 1, 2000 through June 30, 2001, as well as the interim rates for subsequent school years.

25.     In September 2003, in accordance with the methodology set out in its approved State Medicaid Plan, DHHR submitted a claim reflecting retrospective rate adjustments.  DHHR claimed additional FFP for the difference between the interim rates and actual costs for the period at issue here.

*The HHS Office of Inspector General ("OIG") Audit*

26.     Beginning in April 2005, the OIG audited a portion of West Virginia's retrospective adjustments for SBHS costs.  *See* U.S. Dep't of Health & Human Servs., Office of Inspector Gen., *Review of Timeliness of West Virginia's Retroactive Claims for Medicaid School-Based Services* (Apr. 2009).  The audit covered $4,055,229 in FFP that corresponded with additional (settlement) expenditures made during the quarters ending December 31, 2000 through June 30, 2001, more than two years before the final claim for reimbursement of the expenditures had been submitted.  The OIG accepted the portion of the cost settlement that covered adjustments to costs of salaries and fringe benefits as within an exemption from the two-year limit because these types of costs had been included in the interim rate.  However, the OIG classified the previously unavailable operating and indirect costs included in the final SBHS

rates as "new cost components" because such costs had not been used in calculating the interim rates on which the original claim was based. *Id.*, app. at 2. The auditors asserted that DHHR's retroactive claim for the operating and indirect costs ($2,298,329 in FFP) represented a "new and separate request for Federal funding" and did not fall within an exception to the two-year limit. *Id.* at 5-6.

27. In its response to the draft version of the OIG audit report, DHHR emphasized that it had submitted all SBHS claims within the two-year window, and that it retrospectively adjusted interim rates only for the same services it had timely claimed. *Id.*, app. at 1-3. The OIG agreed that "the claims did not represent costs for new services," but declined to modify its recommendation. *Id.* at 6.

*The CMS Disallowance*

28. Based on the OIG Audit findings, CMS issued a disallowance of $2,298,329 in FFP on January 22, 2010. *See* Letter from Ted Gallagher, Assoc. Reg'l Adm'r, CMS, to Nancy Atkins, Comm'r, Bureau for Med. Servs., DHHR, at 1-2 (Jan. 22, 2010). CMS concluded that because operating and indirect costs were "new categories of costs [that] had never been claimed before," they were not subject to retroactive adjustment. *Id.* at 2. In taking the disallowance, CMS did not dispute that DHHR had claimed the rate adjustments in accordance with the retrospective payment methodology set out in its approved State plan, nor did CMS address the fact that reliable statewide historical data on operating and indirect costs had been unavailable when DHHR had set its interim SBHS rates.

29. West Virginia appealed the disallowance to the DAB. The State argued that the disallowance was improper because its retrospective claim for FFP in SBHS costs fits squarely within the "adjustment to prior year costs" exception to the two-year filing requirement.

9

The State explained that, unlike past cases in which the Board had concluded that retroactive claims did not fall within this exception, West Virginia's adjustments to its previously filed, interim rates related to same services and the same utilization covered by the interim rates, not to new "cost items."

30. The State also argued that, even if operating and indirect costs are "cost items," they are not new items. Unlike the States in past cases cited by the OIG and CMS, West Virginia never intentionally excluded operating and indirect costs from SBHS reimbursement, never sought to reopen finalized cost reports, and never retroactively changed years of established state practice. Rather, the State always intended to include these costs in the final cost-settled rates, but could not reliably estimate these costs at the time it calculated the interim SBHS rates. West Virginia adjusted its final rates to include operating and indirect costs for prior years as soon as WVEIS data became available.

*The DAB Decision*

31. On March 14, 2011, the DAB issued Decision No. 2365, in which it sustained the $2,298,329 disallowance in its entirety.

32. The Board determined that it was undisputed that West Virginia had filed its FFP claim for the funds at issue outside the two-year filing period established by Section 1132(a) of the SSA. The DAB concluded that the exception for adjustments to prior year costs did not apply because the operating and indirect costs of providing SBHS had not been unforeseen or unavailable. The DAB rejected West Virginia's interpretation of its own State plan language requiring interim SBHS costs to be "settled on an annual basis," dismissing the State's longstanding practice of retroactively adjusting payment rates for similar rate methodologies to reflect the total, actual costs as determined by cost settlement.

## COUNT I

### (Agency Action Contrary to Law in Disallowing FFP for SBHS Expenditures)

33. Plaintiff repeats and realleges every allegation in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. Defendants' disallowance of FFP for the portion of West Virginia's SBHS expenditures that relates to the operating or indirect costs of providing SBHS was arbitrary and capricious, an abuse of discretion, and contrary to law.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

A. Enter a judgment declaring that DAB Decision No. 2365, and the underlying CMS disallowance that it upheld, are arbitrary and capricious, an abuse of discretion, and contrary to the requirements of federal law, and are unlawful, null, void, and of no legal effect;

B. Issue a permanent injunction enjoining Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them, from taking any action to recover federal funds that CMS improperly disallowed;

C. Award Plaintiff the costs of this action, including attorneys' fees;

D. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment; and

E. Award Plaintiff such other relief as may be just and proper.

Respectfully submitted,

**DARREL V. MCGRAW, JR.**
**ATTORNEY GENERAL**

/s/ Mary McQuain

Mary McQuain (Local Counsel)
   West Virginia Bar No. 713
WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN RESOURCES,
BUREAU FOR MEDICAL SERVICES,
350 Capitol Street, Room 251
Charleston, WV 25301-1757
Tel: (304) 356-4899
Fax: (304) 558-1509
Email: Mary.G.McQuain@wv.gov

Carolyn F. Corwin
Caroline M. Brown
Jonathan G. Hardin
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291
Email: ccorwin@cov.com
       cbrown@cov.com
       jhardin@cov.com
(Statements of Visiting Attorney
to be filed)

May 10, 2011

*Attorneys for Plaintiff West Virginia*
*Department of Health & Human Resources,*
*Bureau for Medical Services*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May, 2011, a true and correct copy of the foregoing **COMPLAINT** is being served by hand delivery on the following person at the address indicated:

> R. Booth Goodwin III, United States Attorney
> Southern District of West Virginia
> 300 Virginia Street, East
> Suite 4000
> Charleston, WV 25301

I hereby certify that on this 10th day of May, 2011, true and correct copies of the foregoing **COMPLAINT** are being served by certified mail on the following persons at the addresses indicated:

> Kathleen Sebelius, Secretary
> U.S. Department of Health & Human Services
> 200 Independence Avenue, SW
> Washington, DC 20201-0004
>
> Eric H. Holder, Jr., Attorney General
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

<u>/s/ Mary McQuain</u>
Mary McQuain